Matter of Gaylord v Buffalo Transp., Inc. (2021 NY Slip Op 03644)





Matter of Gaylord v Buffalo Transp., Inc.


2021 NY Slip Op 03644


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

531102
[*1]In the Matter of the Claim of Kevin Gaylord, Claimant,
v
Buffalo Transportation, Inc., Respondent, and Southeast Personnel Leasing, Inc., et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:April 22, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Chartwell Law, New York City (Adam T. Devine of counsel), for appellants.
Law Office of Stephen F. Szymoniak, Williamsville (Stephen F. Szymoniak of counsel), for Buffalo Transportation, Inc., respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed August 20, 2019, which ruled that State National Insurance Company, Inc. is the liable workers' compensation carrier.
Claimant was working as a bus driver for Buffalo Transportation, Inc. when he was struck by a car while crossing a street at the end of his shift on February 9, 2018, sustaining multiple injuries. He filed a claim for workers' compensation benefits, listing Buffalo Transportation as his employer, which had hired him in 2016. In September 2017, Buffalo Transportation had entered into a personnel leasing agreement with Southeast Personnel Leasing, Inc. (hereinafter SPLI) — a professional employer organization (hereinafter PEO) (see Labor Law § 916 [3], [4]). Under the agreement, Buffalo Transportation outsourced certain human resources responsibilities for some of its employees to SPLI, obligating SPLI to perform duties typically associated with an employment relationship, including securing "workers' compensation coverage for its worksite employees either in its own name or in [Buffalo Transportation's] name" (Labor Law § 922 [3] [c]; see Labor Law § 916 [3] [d]). To that end, in January 2018, SPLI procured from State National Insurance Company, Inc. a workers' compensation policy covering certain employees, which was in effect at the time of claimant's accident.
After being put on notice of the claim, State National controverted it, asserting that claimant was not a worksite employee covered under its workers' compensation policy and that Buffalo Transportation was responsible to provide coverage — a contention that Buffalo Transportation disputed.[FN1] At the ensuing hearing, claimant testified that he believed he had been an employee of Buffalo Transportation in that he was hired and paid by Buffalo Transportation and did not have dealings with any other entity. SPLI and State National did not call any witnesses and argued that Buffalo Transportation was required to obtain its own workers' compensation policy covering claimant, asserting that the State National policy only insured employees expressly leased by SPLI to Buffalo Transportation under the September 2017 agreement and that claimant, who had been hired before the agreement went into effect, was never actually leased to Buffalo Transportation. A Workers' Compensation Law Judge established the claim for injuries to claimant's head, ribs, legs and left shoulder, found that claimant was an employee of Buffalo Transportation entitled to workers' compensation coverage and concluded that he was covered under the State National policy. The Workers' Compensation Board affirmed that determination on administrative appeal, finding that SPLI was statutorily obligated to provide workers' compensation coverage for claimant's injuries and that State National was the proper carrier. SPLI and State National appeal.
We affirm. By statute, when a PEO (here, SPLI) enters into a professional employer agreement with [*2]a client (here, Buffalo Transportation), it "agrees to co-employ all or a majority of the employees providing services for the client" (Labor Law § 916 [3] [a]; see Tri-State Empl. Servs. v Mountbatten Sur. Co., 99 NY2d 476, 481 [2003]). Under the co-employment arrangement, the PEO assumes many of the rights and responsibilities of an employer, including the responsibility to "secure and provide required workers' compensation coverage for its worksite employees either in its own name or in its client's name" (Labor Law § 922 [3] [c]; see Labor Law § 916 [3] [d]; Matter of RobsonWoese, Inc. [Commissioner of Labor], 42 AD3d 774, 774-775 [2007]). A "[w]orksite [e]mployee" is "a person having an employment relationship with both the [PEO] and the client" (Labor Law § 916 [6]) and, by statute, both the client and the PEO are "considered [to be] the employer for the purpose of coverage under the [W]orkers' [C]ompensation [L]aw" (Labor Law § 922 [4]). Given that SPLI, as the leasing company for Buffalo Transportation, procured a workers' compensation policy from State National providing coverage for certain employees, it fulfilled its statutory obligation under both Labor Law § 916 (3) (d) and Workers' Compensation Law § 50.
The question thus distills to whether claimant is covered under that policy. Workers' compensation insurance policies generally "extend to all employees who are employed during the policy period in question and not shown to be excluded" (Matter of Cerbasi v County Metal & Glass, Inc., 115 AD3d 1084, 1085 [2014] [internal quotation marks and citations omitted]). "Where ambiguity exists as to coverage, doubt should be resolved in favor of the insured" (Matter of Liberty Mut. Fire Ins. Co. [Malatino], 75 AD3d 967, 968 [2010] [citations omitted]). Here, the workers' compensation policy names "[SPLI] L/C/F for Buffalo Transportation" as the insured entity,[FN2] lists "BUS COMPANY - ALL OTHER EMPLOYEES & DRIVERS" under the classification of operations, and does not contain a list of specifically-enumerated employees to which the policy is limited. Pursuant to Workers' Compensation Law § 54 (4), this policy is "deemed to include all employees of the employer employed at or in connection with the business of the employer."
In support of their argument that the policy does not cover claimant, State National and SPLI point to an endorsement page specifying that the policy provides coverage for bodily injury "for the workers leased to the client" and that the client remains obligated to secure coverage for non-leased employees. They further contend that claimant was not a "leased" employee under the 2017 personnel agreement, which only "include[d] those employees who ha[d] completed SPLI's employment process and ha[d] been accepted, approved, and paid by SPLI." In our view, SPLI and State National have failed to establish this contention with sufficient proof. The only evidence submitted with respect to this issue was a list produced [*3]by SPLI labelled "employee alpha listing," dated April 5, 2018 and purporting to include the leased employees. We recognize that the list does not include claimant's name, but it is telling that it only includes ambulance drivers and not bus drivers. Nor is there any indication in the record that this list was attached to or made part of the workers' compensation policy, and it was never established through affidavits or testimony that this document was an exhaustive list of all SPLI employees leased to Buffalo Transportation. Moreover, nothing in the record indicates that SPLI — as PEO — leased only ambulance drivers to Buffalo Transportation and the PEO agreement contained no such limitation. The policy, which lists all bus drivers, indicates otherwise. Thus, State National and SPLI have failed to clearly establish that claimant was not a leased employee covered by the policy and, accordingly, did not "satisfy the burden which [they] b[ore] of establishing that the exclusions or exemptions apply in [this] particular case" so as to avoid coverage of claimant (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]; see Matter of Cerbasi v County Metal & Glass, Inc., 115 AD3d at 1085).
Finally, contrary to the contention of SPLI and State National, Labor Law § 916 (4) does not clearly vitiate SPLI's status as a co-employer of claimant. That section provides that, "[i]n determining whether the [PEO] employs all or a majority of the employees of a client, any person employed pursuant to the terms of the [PEO] agreement after the initial placement of client employees on the payroll of the [PEO] shall be included" (Labor Law § 916 [4]). This language is inclusive, not restrictive, and the fact that claimant was hired in 2016 by Buffalo Transportation directly — prior to the effective date of the 2017 personnel agreement — does not preclude a finding that SPLI was a co-employer of claimant and, thus, statutorily obligated to procure workers' compensation insurance coverage for him (see Labor Law §§ 916 [3], [6]; 922 [4]; see generally Matter of Crespo v State of New York, 41 Misc 3d 807, 808-809, 812-813 [Ct Claims 2013]).[FN3]
As Buffalo Transportation had no workers' compensation policy and SPLI had a policy through State National in effect on the date of the accident which did not clearly exclude coverage for claimant, the Board rationally concluded that State National was the responsible carrier (see Matter of Cerbasi v County Metal & Glass, Inc., 115 AD3d at 1085; Matter of Ovando v Hanover Delivery Serv., Inc., 13 AD3d 780, 781-782 [2004]). State National and SPLI's due process claims are not preserved for our review (see Matter of Duncan v John Wiley & Sons, Inc., 137 AD3d 1430, 1431 [2016]), and their remaining contentions lack merit.
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Following an investigation, a Workers' Compensation Board investigator filed an enforcement unit report concluding that coverage for the accident was through the State National policy. As Buffalo Transportation did not have a separate workers' compensation policy, the Uninsured Employers' Fund was added as a party of interest.

Footnote 2: The policy makes clear that both the leasing firm (here, SPLI) and the client (here, Buffalo Transportation) were considered to be named insureds under the policy.

Footnote 3: Although it was uncontroverted that claimant was paid directly by Buffalo Transportation — a duty that is typically reserved to the PEO (see Labor Law § 922 [3] [a]) — the failure of the PEO and the client to abide by all of the statutory provisions, or all terms of their agreement, does not undermine a finding of a co-employment relationship or the PEO's statutory obligation to secure workers' compensation coverage.